UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

**CIVIL ACTION NO. 03-257-JBC**

**TINA DIGUGLIELMO,**                                                                     **PLAINTIFF,**

**V.**                         **MEMORANDUM OPINION AND ORDER**

**LES BROWNLEE, ET AL.,**                                            **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the renewed motion of the defendant, Francis J. Harvey, Secretary of the Army,[1] for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). The court, having reviewed the record and being otherwise sufficiently advised, will grant the motion in part and deny it in part.

**I.  FACTUAL BACKGROUND**

The following factual background is stated in a light most favorable to the plaintiff, Tina Diguglielmo, as she is the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The plaintiff began working at Blue Grass Army Depot ("BGAD") in Madison County as a management analyst in 1984. Her husband, Dane Maddox, began working at BGAD in 1989. In October 1990, the plaintiff was promoted to Director of Mission Operations ("DMO"), and on October 17, 1993, she was temporarily promoted to Civilian Executive Assistant ("CEA"), after Jim Wilson retired. The

---

[1] Francis J. Harvey replaced Les Brownlee as Secretary of the Army.

plaintiff was the only female CEA employed by the defendant at that time. This temporary promotion included a change from Grade 14 to Grade 15, which lasted for 179 days. After that period, the plaintiff's grade reverted to Grade 14, but she continued to perform the CEA duties. On July 31, 1994, the plaintiff was permanently reassigned from the DMO position to serve in a dual-capacity DMO/CEA position at Grade 14.

Sometime in September 1995, an anonymous caller to the Department of Defense Hotline complained of conflict of interest and nepotism because the plaintiff's husband also worked at BGAD. Upon her promotion, the plaintiff's husband had been removed from her line of supervision and placed in that of Colonel McCormick. The Inspector General's Office had previously found no conflict of interest existed after an investigation. Some investigators had suggested, however, that the plaintiff's husband be reassigned to allow the plaintiff to remain in her position as CEA. Other options had also been suggested to eliminate any perceived conflict of interest, but the defendant had rejected all of them.

In the fall of 1995, after more complaints arose, Major General Benchoff and his successor, Major General Monroe, ordered Colonel Colvin to abolish the combined DMO/CEA position and to fill it as a military, deputy commander position. The plaintiff was notified on February 28, 1996, that she would be reassigned to the DMO position effective on March 31, 1996. On April 1, 1996, the plaintiff filed a complaint with the EEOC alleging sex discrimination, a charge for which she later received a right-to-

sue letter.

In April 1997 the defendant announced an open CEA position at Grade 15. The plaintiff applied for this position, but the announcement was cancelled. In August 1997 Wayne Fannin, a Civilian Operations Officer who worked for BGAD Special Operations Forces Support Activity ("SOFSA") in Lexington, was laterally, non-competitively appointed to the position in Madison County.

**II.   LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "With the benefit of having all evidence and justifiable inferences drawn from such evidence in its favor, the nonmoving party 'must set forth specific facts showing that there is a genuine issue,' such that a jury could reasonably find for the nonmoving party." *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 792 (6th Cir. 2004) (internal citations omitted).

**III.   ANALYSIS**

The plaintiff has two remaining claims: (1) sex discrimination in violation of Title

VII based on the defendant's failure to promote her to the CEA position and on her removal from the CEA position; and (2) retaliation for opposing unlawful discriminatory employment practices in violation of Title VII. The defendant argues that summary judgment is appropriate because the plaintiff's failure-to-promote claim is untimely and because she cannot establish a prima facie case of discrimination or retaliation. For the reasons explained below, summary judgment is inappropriate on the plaintiff's sex discrimination claim but appropriate on her retaliation claim.

**A.    Statute of Limitations**

Under Title VII, federal employees must exhaust administrative remedies before bringing a suit in federal court. The regulations governing administrative remedies require that aggrieved federal employees contact an agency EEO counselor within 45 days of the alleged discriminatory event. *See* 29 C.F.R. § 1614.105(a)(1) (2000). If a complainant fails to meet this time limit, her complaint is subject to dismissal. 29 C.F.R. § 1614.107(a)(2), (b). The 45-day period begins to run when the "employer makes and communicates a final decision to the employee. Once the employee is aware or reasonably should be aware of the employer's decision, the limitations period commences." *E.E.O.C. v. United Parcel Serv., Inc.*, 249 F.3d 557, 561-62 (6th Cir. 2001) citing *DE State Coll. v. Ricks*, 449 U.S. 250, 258 (1980).

Failure to file a charge with the EEO counselor within the 45-day period does not necessarily result in the dismissal of the aggrieved employee's Title VII action because the time limits in 29 C.F.R. § 1614.105(a)(1) are not jurisdictional. The time limits are

in the nature of a statute of limitations, which may be subject to waiver, estoppel, or equitable tolling. *Mitchell v. Chapman*, 343 F.3d 811, 819-20 (6th Cir. 2003). Tolling in a Title VII context should be allowed "only sparingly" and is "available only in compelling cases which justify a departure from established procedures." *Steiner v. Henderson*, 354 F.3d 432, 435 (6th Cir. 2003) citing *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1488 (6th Cir. 1989).

As in his previous motion for summary judgment, the defendant argues that the plaintiff's discrimination claim based on the failure to promote her in July 1994 is barred because the plaintiff did not seek an administrative remedy until April 1996. The plaintiff contends that she did not know about the final decision not to promote her until February 28, 1996, when she was informed that she would be removed from the CEA position, reassigned, and placed in the DMO position, effective March 31, 1996. Prior to that date, she claims, she performed the duties associated with the CEA position. While the defendant asserts that the plaintiff admitted in her deposition that she knew "around November 1995" that she would not be promoted, such testimony would, at best, be impeachment material to counter her current assertion; it does not conclusively establish when the plaintiff knew of the decision not to promote her. Additionally, the defendant does not present evidence to establish that the final decision was made prior to March. A jury could find that it is reasonable for the plaintiff to believe that she would be promoted to the position permanently as long as she was performing the CEA duties.

At the very least, there is a genuine issue of material fact as to whether the plaintiff contacted an EEO counselor within 45 days of when she became aware of or should have become aware of her employer's final decision.  Thus, the defendant fails to show a lack of administrative exhaustion as a matter of law, and summary judgment is inappropriate on a statute-of-limitations basis.

**B.    Sex Discrimination**

The plaintiff claims that the defendant discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq.  Title VII prohibits two forms of discrimination – disparate impact and disparate treatment.  A plaintiff may establish a prima facie case of discrimination through either direct evidence of intentional discrimination, *Terbovitz v. Fiscal Court of Adair County*, 825 F.2d 111, 114-15 (6th Cir. 1987), or circumstantial evidence giving rise to an inference of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Direct evidence and the *McDonnell Douglas* formula comprise "two different evidentiary paths by which to resolve the ultimate issue of defendant's discriminatory intent." *Blalock v. Metals Trades, Inc.*, 775 F.2d 703, 707 (6th Cir. 1985).  Where a plaintiff presents direct, credible evidence of discrimination, the *McDonnell Douglas* formula is inapplicable because the "plaintiff no longer needs the inference of discrimination that arises from the prima facie case." *Terbovitz*, 825 F.2d at 115.

Because the plaintiff has not presented direct evidence of sex discrimination, the court must apply the familiar three-part formula from *McDonnell Douglas*.  The plaintiff

carries the initial burden of establishing a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. To do so, the plaintiff must demonstrate that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the relevant position; and (4) she was replaced by someone outside her protected class or was treated differently than similarly situated individuals outside her protected class. *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 538-39 (6th Cir. 2002). The plaintiff's burden of establishing a prima facie case is "not onerous" and is a "burden easily met." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 1999). Once the plaintiff establishes a prima facie case by a preponderance of the evidence, an inference of discrimination arises. *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 728-29 (6th Cir. 1999).

The burden then shifts to the defendant to rebut the presumption by offering a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. The defendant need not persuade the court that it was "actually motivated by the proffered reasons" but the "explanation provided must be legally sufficient to justify a judgment for the defendant." *Burdine*, 450 U.S. at 254-55. To meet its burden, the defendant must clearly articulate, through introduction of admissible evidence, the non-discriminatory reasons for its employment decision. *Id.*

The plaintiff must then respond by demonstrating, by a preponderance of the evidence, that the defendant's proffered reason for the employment action is a pretext

for discrimination. *McDonnell Douglas*, 411 U.S. at 802-04. A plaintiff can show that the defendant's decision was pretextual by presenting sufficient evidence that the proffered reasons (1) had no basis in fact, (2) did not actually motivate the decision, or (3) were insufficient to motivate the decision. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078-1084 (6th Cir. 1994). If the plaintiff has made her prima facie case and presented sufficient evidence for a reasonable jury to reject the defendant's asserted justification for its actions, then the case should be submitted to the factfinder "to determine whether intentional discrimination has occurred." *Manzer*, 29 F.3d at 1083.

**1.      Prima Facie Case**

The debate centers on the latter three elements of a prima facie case of discrimination because, as a woman, the plaintiff is a member of a protected class, meeting the first element. Each of the other three elements will be discussed below.

i.      *Adverse Employment Action*

"An adverse employment action is a materially adverse change in the terms or conditions of employment because of the employer's conduct." *Policastro*, 297 F.3d at 539. "To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration in job responsibilities." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). Examples of a materially adverse employment decision include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a

material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* "Reassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions." *Policastro*, 297 F.3d at 539.

The plaintiff argues that she was "constructively demoted" when she was removed from the CEA position and placed in the DMO position, because the DMO position had less authority, visibility, and responsibility than the CEA position. While the plaintiff did not experience a loss in wage or salary or a material loss in benefits and her work location and office did not change, a reasonable jury could find that the change in title was an adverse employment action. The plaintiff had different responsibilities in the DMO position than she had in the combined DMO/CEA position or would have had in the CEA position had she been promoted. Additionally, the CEA position was a Grade 15 position, a step above the plaintiff's Grade 14 DMO job, so if she had been promoted she would have received a pay raise.

ii.  *Qualified for the Position*

The defendant argues that the plaintiff was not qualified for the CEA position, the position to which she sought a promotion and the position the plaintiff argues from which she should not have been removed, due to the anti-nepotism policy. The plaintiff argues that she was qualified for the position and that the policy did not affect her because her husband was removed from her line of supervision. This dispute is sufficient to establish a genuine issue of material fact which a jury must resolve as to

9

whether the plaintiff was qualified.

iii.     *Similarly Situated Individual Treated More Favorably*

The plaintiff must present evidence that she was treated differently than a similarly situated individual outside of the protected class. To be considered similarly situated, a plaintiff "need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated'" but rather must show that the plaintiff and the comparable person are similar "in all of the relevant aspects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

The plaintiff points to Jim Wilson, who was a CEA at BGAD, and his son-in-law, who was a security supervisor at the BGAD, and to William and Jim Ernst, brothers who were both in supervisory positions at the Savannah Illinois Installation operated by the defendant. As all of these individuals are men, they are outside the protected class. They are similarly situated in the relevant aspects, as they were employed by the defendant and had apparent conflicts of interest due to a close family member's employment. Jim Wilson was treated more favorably because he was not removed from his CEA position.[2] The brothers were treated more favorably because when questions of nepotism arose, the brother in the junior position was reassigned to a new position.

---

[2] Although the plaintiff includes no evidence to support her depictions of these men, the court credits her argument because the defendant does not challenge it.

10

**2.      Legitimate Non-Discriminatory Reason**

The defendant has offered a legitimate, non-discriminatory reason for reassigning the plaintiff from the combined DMO/CEA position and for failing to promote the plaintiff: that he took these employment actions because of the perceived conflict of interest in violation of various regulatory and statutory restrictions. Preventing conflicts of interest and following a policy designed to prevent nepotism are legitimate, non-discriminatory reasons to make an employment decision. The plaintiff acknowledges that a policy forbidding nepotism is common and valid as long as it is uniformly applied to males and females. (Plaintiff's Response at 8)

**3.      Pretext**

The plaintiff has met her burden to show that the proffered reason is pretextual. In her response to the defendant's motion, she argues that the policy did not really motivate the decision to remove her from the combined DMO/CEA position and not to promote her to the CEA position. To support her argument, the plaintiff points to evidence of differential treatment regarding Jim Wilson and his son-in-law and the two brothers at the Savannah Illinois Installation. She also presents evidence that any suggestions of alternate resolutions of the conflict of interest were rejected by the defendant. While none of this evidence conclusively establishes that the defendant's proffered reason was pretextual, it is sufficient to establish a genuine issue of material fact.

Viewing the evidence in the light most favorable to the plaintiff, the plaintiff's

11

claim for sex discrimination should proceed because she has presented sufficient evidence to establish a genuine issue of material fact regarding a prima facie case. Further, she has presented proof that the defendant's proffered reason for removing the plaintiff from the CEA position was pretext for intentional discrimination. Summary judgment on the sex discrimination claim is inappropriate at this time.

**C.    Retaliation**

Title VII also forbids retaliation for any act seeking to enforce the statute's prohibition on discrimination. It prohibits an employer from retaliating against an employee for opposing any practice by the employer that is unlawful under Title VII, and it prohibits an employer from retaliating against an employee who has participated in any manner in a Title VII investigation. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2001). Retaliation can be proven through direct evidence or circumstantial evidence. *DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir. 2004). Where, as here, the evidence is circumstantial, the plaintiff must establish a prima facie case of retaliation by proving that (1) she engaged in a protected activity; (2) the exercise of that protected right was known to the employer; (3) the employer took an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. *Akers v. Alvey*, 338 F.3d 491, 497 (6th Cir. 2003). Once a prima facie case is established, the defendant must offer a legitimate non-discriminatory reason for the adverse employment action. *Akers*, 338 F.3d at 499. Next, the plaintiff must show that the proffered reason is mere pretext

for intentional discrimination. *Id.*

Here, the plaintiff has not established a prima facie case of retaliation.[3] Title VII protects an employee's opposition to a discriminatory act. The plaintiff has failed to establish a causal connection between her protected activity, filing a claim with the EEO counselor and opposing allegedly unlawful employment practices, and the alleged discriminatory act of filling the CEA position with Wayne Fannin. Simply pointing to a close proximity in time is insufficient, standing alone, to establish a causal connection. *Nguyen v. Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). Even if she had presented a prima facie case, she did not present a response to the defendant's legitimate, non-discriminatory reason for not promoting her – the anti-nepotism policy and perceived conflict of interest. Thus, summary judgment is appropriate on this claim. Accordingly,

**IT IS ORDERED** that the defendant's motion for summary judgment (DE 26) is **DENIED IN PART** and **GRANTED IN PART**. The defendant's motion is denied regarding the sex discrimination claim and is granted regarding the retaliation claim.



Signed on July 6, 2005

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

---

[3] In her response to the defendant's motion for summary judgment, the plaintiff did not mention her retaliation claim, let alone present evidence to establish a prima facie case of retaliation.